# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| CHRISTOPHER SPECHT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| LEE HEALTH SYSTEM, INC., d/b/a LEE HEALTH and d/b/a LEE HEALTH MEDICAL EQUIPMENT SOLUTIONS, and ACCESS MEDICAL SOUTH, L.C. d/b/a LEE HEALTH MEDICAL EQUIPMENT SOLUTIONS, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Christopher Specht ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendants Lee Health System, Inc., d/b/a Lee Health and d/b/a Lee Health Medical Equipment Solutions ("Lee Health"), and Access Medical South, L.C. d/b/a Lee Health Medical Equipment Solutions ("Access Medical") (collectively, "Defendants"). Plaintiff alleges the following facts based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and as to all other matters, upon the investigation of counsel:

## NATURE OF THE ACTION

1.      This case is about a hospital system that treats the law as optional. Lee Health—a dominant healthcare provider in Southwest Florida—bombarded Plaintiff with unsolicited prerecorded telephone calls promoting the purchase of medical supplies, and separately, it also recorded Plaintiff's telephone conversation without his consent. When Plaintiff objected to these privacy invasions, he was escorted out of Defendant's facility by armed security and told him he was trespassing. Lee Health's conduct violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, and the Florida Security of Communications Act ("FSCA"), Fla. Stat. § 934.03, *et seq*.

2.      As if this intrusion into patient privacy were not enough, Lee Health also records patient telephone calls, including those that contain private, confidential, and personal health, medical, and identifying information—without obtaining consent—in direct violation of Florida's two-party consent law. Lee Health knows the law. Its facilities display prominent signs stating: "No Recording Without Consent" and warning that "unauthorized recording or sharing is illegal in the state of Florida." Lee Health's "Patient Consent to Audio Recording" form tells patients that their consent to be recorded is "voluntary and not a condition for receiving treatment."

3.      Plaintiff declined to sign the recording consent form. Lee Health's patient chart system *reflects* this. A "RED FLAG ALERT" in Plaintiff's medical chart notifies all Lee Health staff and personnel that Plaintiff does not consent to being recorded, and instructs them to take notice of this mandatory advisory. Despite this required

rule, Lee Health ignores its own patient chart advisory, and the law. A Lee Health supervisor admitted to Plaintiff that Lee Health records calls in and out of its facilities and told him that staff routinely misinform patients about whether recording equipment has been turned off.

4.      This class action seeks to hold Defendants accountable for their knowing and willful disregard of the law, and to recover statutory damages and liquidated damages to compensate Plaintiff and the proposed Class for Defendants' respective violations of their rights under federal and state law.

## JURISDICTION AND VENUE

5.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff pleads a claim under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims arising under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059, and the Florida Security of Communications Act, Fla. Stat. § 934.03, *et seq.*, because those claims form part of the same case or controversy and arise from the same nucleus of operative fact as Plaintiff's TCPA claim.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

8.    Plaintiff is a natural person and citizen and resident of Lee County, Florida. At all relevant times, Plaintiff was the residential subscriber and primary user of his number ending in 1424.

9.    Defendant Lee Health is a Florida Not For Profit Corporation organized under the laws of the State of Florida, with its principal place of business at 4211 Metro Parkway, Fort Myers, Florida 33916. Defendant Lee Heath does business as "Lee Health" and as "Lee Health Medical Equipment Solutions." It operates the dominant healthcare system in Lee County, Florida, including hospitals and outpatient centers.

10.    Defendant Access Medical is a Florida limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 9369 Laredo Avenue, Suite 170, Fort Myers, Florida 33905.

11.    Lee Health and Access Medical are collectively referred to herein as "Defendants." As set forth below, Defendants share common ownership and common management, and are each directly and/or are jointly responsible for the TCPA violations alleged in this Complaint.

12.    "Lee Health Medical Equipment Solutions" is a fictitious name—a trade name or "doing business as" designation—under which Access Medical has conducted, and continues to conduct, business operations in Florida. On April 18, 2024, Access Medical registered this fictitious name with the Florida Division of Corporations, Registration Number G24000051845, Lee County, with a mailing address of 12681 Creekside Lane, Suite 201, Fort Myers, Florida 33919.

4

13.     Separately, on October 4, 2024, Lee Health independently registered the identical fictitious name "Lee Health Medical Equipment Solutions" with the Florida Division of Corporations, listing Lee Health's own corporate name, address, and Florida Document Number (N24000004376) as the owner of the trade name, and designating the same Fort Myers mailing address as Access Medical's registration. Lee Health's Secretary, Kara Korosec, executed that registration on behalf of Lee Health on September 16, 2024. Accordingly, both Access Medical and Lee Health have independently asserted ownership of and conducted business under the fictitious name "Lee Health Medical Equipment Solutions."

14.     At all times material hereto, Access Medical and Lee Health operated jointly, in concert, and as a common enterprise under the unified trade name "Lee Health Medical Equipment Solutions," sharing common branding, common management personnel, and a common principal business address.

15.     The prerecorded voice calls at issue in this action were initiated, authorized, directed, ratified, or otherwise caused by one or more of the Defendants, acting individually, jointly, and/or through an agency or principal-agent relationship. Plaintiff is informed and believes, and on that basis alleges, that each Defendant participated in, directed, authorized, or ratified the unlawful calling conduct described herein, or alternatively exercised sufficient control over the party or parties that initiated such calls so as to render each Defendant vicariously liable for the conduct of the other.

16.    The precise nature and involvement of each Defendant's role in initiating, authorizing, directing, approving, and/or supervising the telephonic communications at issue—including which entity selected the calling platform, furnished the call list, scripted the prerecorded messages, and authorized the calling campaign—is information uniquely within the knowledge and possession of Defendants and their agents, servants, and employees. Plaintiff will seek this information through discovery and reserves the right to amend this Complaint to conform to the evidence as it is developed.

17.    To the extent any Defendant contends it did not itself physically initiate the calls at issue, each such Defendant is nonetheless liable as the principal on whose behalf the calls were made, having provided the substantial assistance, direction, authorization, or ratification necessary to establish direct or vicarious liability. Further, each Defendant's assertion of ownership and use of the trade name "Lee Health Medical Equipment Solutions"—under which the calls were placed—independently supports each Defendant's liability for calls made in furtherance of their shared business enterprise.

## STATUTORY AND REGULATORY BACKGROUND

### The Telephone Consumer Protection Act

18.    In 1991, Congress enacted the TCPA to curb abusive telemarketing practices that invade consumer privacy. Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5)

(1991). *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (noting TCPA's response to "voluminous consumer complaints about abuses of telephone technology").

19.    The TCPA prohibits initiating any call—other than for emergency purposes or with prior express consent—using an artificial or prerecorded voice to a telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Where the call includes or introduces an advertisement or constitutes telemarketing, the caller must obtain prior express *written* consent. 47 C.F.R. § 64.1200(a)(2)

20.    The term "prior express written consent" means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(9). To be valid, the written agreement must include a ***clear and conspicuous*** disclosure informing the person signing that by executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9)(i)(A). Moreover, the required clear and conspicuous disclosure must also inform the person that they are not required to sign the agreement, directly or indirectly, or agree to enter into such an agreement as a condition of purchasing any property, goods, or services. 47 C.F.R. § 64.1200(f)(9)(i)(B). Consent that does not

satisfy each of these requirements is legally insufficient to authorize telemarketing robocalls under the TCPA.

21.    The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3).

<strong>The Florida Telephone Solicitation Act</strong>

22.    The FTSA protects Florida residents from intrusive telemarketing calls and text messages. The FTSA safeguards privacy and prevents harassment through unsolicited "telephonic sales calls"—defined as calls, texts, or voicemails for the purpose of selling, extending credit, or gathering information for such purposes. Fla. Stat. § 501.059(1)(j). The FTSA applies to telemarketers that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

23.    The FTSA prohibits unsolicited telephonic sales calls using a recorded message, without prior express written consent. Fla. Stat. § 501.059(8)(a). The FTSA defines "prior express written consent" as a written agreement that: (1) bears the signature of the called party; (2) clearly authorizes the placement of telephonic sales calls using an automated system for dialing or a recorded message; (3) includes the telephone number to which such calls are authorized; and (4) includes a clear and conspicuous disclosure that the called party is not required to sign the agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

24.     The FTSA provides liquidated damages of $500 per violation, trebled to $1,500 for willful or knowing violations, injunctive relief, and reasonable attorney's fees. Fla. Stat. § 501.059(10), (11)(a).

### The Florida Security of Communications Act

25.     Florida is an all-party-consent state. The FSCA makes it unlawful for any person to intentionally intercept any wire, oral, or electronic communication unless all parties to the communication have given prior consent. Fla. Stat. § 934.03(1)(a), (2)(d). The term "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. Fla. Stat. § 934.02(3).

26.     Any person whose wire, oral, or electronic communication is intercepted in violation of the FSCA has a civil cause of action and is entitled to recover: (a) preliminary or equitable or declaratory relief; (b) actual damages, but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is higher; (c) punitive damages; and (d) reasonable attorney's fees and litigation costs. Fla. Stat. § 934.10(1).

27.     A civil action under the FSCA must be commenced within two years after the claimant first has a reasonable opportunity to discover the violation. Fla. Stat. § 934.10(3).

## FACTUAL ALLEGATIONS

### Lee Health's Conditions of Service and
### Purported Consent to Prerecorded Calls

28.    Plaintiff was a patient of Lee Health and received medical services at Lee Health facilities in Lee County, Florida.

29.    Lee Health requires patients to sign a "Conditions of Service" form as a condition to receiving medical care. The Conditions of Service form includes a provision in paragraph 4(g) purporting to authorize Lee Health to place automated telephone calls and prerecorded messages to the patient.

30.    That provision is buried within the form and does not clearly and conspicuously disclose that the patient is authorizing automated or prerecorded calls, as required by the TCPA and the FTSA.

31.    Plaintiff never signed the Conditions of Service form containing paragraph 4(g)—he expressly rejected it.

32.    Even if Plaintiff and putative Class Members had signed the Conditions of Service form, the form does not constitute valid "prior express written consent" under either the TCPA or the FTSA because it did not include a clear and conspicuous disclosure of consent, and more importantly, it required consent as a condition of purchase to receive medical treatment.

33.    Lee Heath's continued telemarketing to Plaintiff is intentional and willful. Plaintiff has provided actual notice to Lee Heath several times of its on-going violations.

34.    Lee Health continued to place calls to Plaintiff after his prior notice of the violations to Lee Health, and after Lee Health placed a "RED FLAG ALERT" in Plaintiff's chart that he was allowed to amend the Condition of Services form by crossing out section 4(g) when he registers for services.

35.    Nevertheless, on October 23, 2025, when Plaintiff arrived at Lee Health's facility for a scheduled barium swallow test, Lee Health required Plaintiff to sign a form consenting to receive automated telephone calls and prerecorded messages as a condition precedent to receiving medical care. When Plaintiff refused to sign the form, Lee Health summoned armed security to escort Plaintiff from the building and informed him that he would be considered trespassing.

36.    After being denied medical treatment and escorted out by armed guards for refusing to consent to prerecorded messages—Plaintiff received prerecorded calls from "Lee Health Medical Equipment Solutions" promoting the purchase of CPAP and BiPAP supplies.

37.    Defendants knew they did not have consent to place these calls to Plaintiff because Lee Health ejected Plaintiff from its premises for refusing to sign its purported "consent" form, among other reasons, including Plaintiff's prior notices to Lee Health. Moreover, because Lee Health escorted Plaintiff off the premises and refused him medical treatment, it further demonstrates that Lee Health required consent as condition of service and purchase of medical care.

## Lee Health's Prerecorded Telephone Calls

38.     Despite having actual knowledge that they lacked consent to place prerecorded calls, Defendants, acting individually or jointly, initiated or caused to be initiated numerous unlawful prerecorded calls to Plaintiff's telephone number in violation of the TCPA and the FTSA.

39.     Those unlawful prerecorded calls without consent included, without limitation, the following.

40.     On February 5, 2026, Defendants placed a call to Plaintiff's number using a prerecorded voice that played the following message:

> Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated…" Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated system, call Lee Health Medical Equipment Solutions toll free at 877 581 1949. For other matters, please call us during normal business hours at 239 343 8290. Thank you.

41.     On February 8, 2026, Defendants placed a call to Plaintiff's number using a prerecorded voice that played the following message:

> Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated… Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household…. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated system, call Lee Health Medical Equipment Solutions toll free at 877 581 1949. For other matters, please call us during normal business hours at 239 343 8290. So much for opting out of not giving permission for automated phone calls. Thank you.

42.    On February 11, 2026, Defendants placed a call to Plaintiff's number using a prerecorded voice that played the following message:

> This is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household…. It's time to replenish your supplies…. Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated system, call Lee Health Medical Equipment Solutions toll free at 877 581 1949. For other matters, please call us during normal business hours at 239 343 8290. Thank you.

43.    The calls above are non-exhaustive examples of some of the unlawful prerecorded calls that Defendants initiated to Plaintiff. Discovery will identify the full extent of the unlawful communications to Plaintiff's phone during the applicable limitations period that were initiated by Defendants or on their behalf.

44.    The prerecorded messages described above identified "Lee Health Medical Equipment Solutions" as the caller, which is a fictious name registered to both Defendants Lee Health and Access Medical.

45.    The prerecorded messages described above requested a callback during normal business hours to "(239) 343-8290." A Google search of this number brings up a website owned and/or controlled by Defendant Lee Health: https://www.leehealth.org/locations/find-a-location/lee-health-medical-equipment-solutions

46.    Each prerecorded message directly promoted or encouraged the purchase of goods or services, specifically CPAP/BIPAP supplies.

13

47.    The leehealth.org webpage associated with the callback number provided in the prerecorded calls describes "an extensive selection of medical products available to make living at home independently safe and comfortable," which "products include:" CPAP/BIPAP supplies, Oxygen, Respiratory equipment, Walkers and commodes, and Wheelchairs and hospital beds.

48.    This is telemarketing as defined by the TCPA and constitutes a "telephonic sales call" as defined by the FTSA

49.    When listening to the messages, Plaintiff easily determined that the voice was prerecorded because: (1) there was a delay before the prerecorded voice started; (2) the voice was robotic and monotone; (3) the voice read a generic message designed for *en masse* transmission; (4) the message was impersonal and did not identify Plaintiff or any specific recipient; (5) the same message replayed in a loop; and (6) the looping prerecorded message did not stop or pause when Plaintiff spoke in response. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171 at 10-11 (N.D. Ga. June 23, 2016) ("When one receives a call it is a clear-cut fact easily discernible to any lay person whether or not the recipient is speaking to a live human being or is instead being subjected to a prerecorded message.").

50.    Plaintiff and Class Members did not provide prior express consent—written or otherwise—to receive prerecorded calls from Lee Health or Access Medical.

**Lee Health's Unlawful Recording of Patient Telephone Calls**

51.    In addition to harassing consumers with unsolicited prerecorded sales calls, Lee Health also secretly records patient telephone conversations.

14

52.    A Lee Health scheduling department employee identified as "Christine" confirmed to Plaintiff that inbound and outbound calls in the scheduling department were recorded and that staff had no ability to disable the recording. Christine further disclosed that the scheduling department employed approximately twenty-nine people and that each employee places a minimum of 120 outgoing calls per day, in addition to handling incoming calls. Based on those figures, the scheduling department alone initiates approximately 3,480 outgoing recorded calls per day—or, conservatively speaking, more than 904,800 outgoing recorded calls per year.

53.    Another Lee Health supervisor admitted to Plaintiff that staff members do not disable recording equipment even after being notified that a patient has not consented, and that staff members tell patients that the recording has been turned off when it has not.

54.    Lee Health knows that Florida is a two-party-consent state. Lee Health's own facilities display signs stating: "No Recording Without Consent" and warning that "unauthorized recording or sharing is illegal in the state of Florida."

55.    Lee Health maintains a "Patient Consent to Audio Recording" form. The form states that consent to recording is "voluntary and not a condition for receiving treatment." Plaintiff declined to sign this form.

56.    Despite Lee Health's "RED FLAG ALERT," and Plaintiff's prior notice to Lee Health that he does not consent to being recorded, Lee Health's staff routinely violate the law, ignore Plaintiff's requests to not be recorded, and record calls with patients who have not consented.

15

57. Since December 19, 2024, Plaintiff is aware of *at least* 58 incoming calls from Lee Heath. Each of these calls were recorded without Plaintiff's consent and each call is a separate violation of the FSCA.

58. On information and belief, Defendant's staff were trained or permitted, expressly or implicitly, to falsely tell patients that a call recording has been disabled when it has not. On one occasion, Plaintiff called a Lee Health facility and requested that the call not be recorded. The staff member placed Plaintiff on hold, returned, and told him the recording had been turned off. Later the same day, Plaintiff called the same facility and again requested that recording be turned off. A different staff member responded that she was "just a call taker" and that staff could not turn off the recording system. When Plaintiff stated that an earlier staff member had told him the recording was turned off, the second employee confirmed that was not true.

59. Another Lee Health employee identified as "Stephanie" then told Plaintiff that staff members routinely tell callers the recording has been stopped in order "to move the call along"—even though the recording continues. Separately, a radiology department supervisor identified as "Dana" confirmed that all calls in the department are recorded, contradicting another radiology employee, "Susan," who told Plaintiff the calls were not recorded. Upon learning of the discrepancy, Dana acknowledged that Susan's representations were incorrect. These admissions demonstrate that Defendant's unauthorized interception of oral communications was not merely the product of a system configuration; it was a practice that staff actively concealed from the very patients whose calls were being recorded without consent.

16

60. Lee Health's unauthorized recording even extends to its behavioral health department, where patient communications carry heightened sensitivity and enhanced privacy protections. A Lee Health behavioral health employee identified as "Brittany" confirmed to Plaintiff that a new telephone system installed around the summer of 2025 records inbound and outbound calls across Lee Health's behavioral health department—and that staff could not turn the recording off. Brittany further confirmed that the recording was "global" and ongoing organization-wide. These calls include scheduling of mental health appointments, therapist communications, medication management discussions, and telehealth sessions—all recorded without patient consent and without any disclosure to the persons whose communications were intercepted.

61. Lee Health's conduct constitutes the intentional interception of wire communications in violation of Fla. Stat. § 934.03(1)(a). Lee Health intercepts the contents of these telephone calls through electronic recording equipment without obtaining the prior consent of all parties to the communication.

62. Defendants' unlawful conduct caused Plaintiff concrete injury and actual harm, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, consumption of phone battery and data, violation of statutory privacy rights, and disruption to daily life. Plaintiff received the unlawful calls at inconvenient times, causing Plaintiff to stop and check his phone, investigate the source of the calls, and retain counsel to stop Defendants' harassing conduct.

## CLASS ALLEGATIONS

63.    Plaintiff brings this action individually and as a class action under Fed.

R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed Classes:

**TCPA Prerecorded Voice Class:** All persons in the United States who, during the period beginning four years prior to the filing of this action and ending through the date of class certification, (1) received a call (2) to their number (3) from Defendants or on their behalf (4) that used an artificial or prerecorded voice, (5) who did not consent.

**FTSA Recorded Message Class:** All persons in Florida who, from July 1, 2021 through the date of class certification, (1) received a telephonic sales call (2) from Defendants or on their behalf (3) that involved the playing of a recorded message, (4) who did not consent.

**FSCA Wiretap Class:** All persons in Florida who, during the period beginning two years prior to the filing of this action and ending through the date of class certification, had a wire communication with Defendant Lee Health or its agents, employees, or representatives intercepted by Lee Health through the use of electronic recording equipment without the prior consent of all parties to the communication.

64.    Excluded from the Classes are: (a) Defendants, their officers, directors, employees, agents, and affiliates; (b) any judicial officer presiding over this matter; (c) members of the judicial officer's staff and immediate family; and (d) Plaintiff's counsel.

65.    **Numerosity.** Upon information and belief, each Class contains at least hundreds and likely thousands of members. Lee Health is a dominant healthcare system in Southwest Florida, operating multiple hospitals and outpatient facilities. Its automated calling and recording practices are systemic—applied uniformly to its patient population. The nature of prerecorded commercial solicitation campaigns by their very nature are designed to reach large groups of consumers. Lee Health's own employees have confirmed the scale of the recording practices through a single

18

department alone that generates approximately 3,480 outgoing recorded calls per day—more than 904,800 per year. The exact number of Class members is ascertainable through Defendant's records, but based on the foregoing, Plaintiff alleges based upon information and belief that the Classes are so numerous that joinder of all members is impracticable.

66.   **Commonality.** Common questions of law and fact exist as to all members of each Class, including: (a) whether Defendants used prerecorded voice messages to contact Class members; (b) whether Defendants obtained prior express consent or prior express written consent; (c) whether Lee Health's Conditions of Service form constitutes valid consent under the TCPA or FTSA; (d) whether Lee Health intercepted wire communications without the consent of all parties; (e) whether Defendants' conduct was willful or knowing; (f) whether Class members are entitled to injunctive relief; and (g) whether Class members are entitled to statutory liquidated, or actual damages.

67.   **Typicality.** Plaintiff's claims are typical of the claims of the Classes. Plaintiff, like all Class members, received prerecorded telephone calls from Defendants without prior express consent and had telephone conversations recorded without consent. Plaintiff's claims arise from the same practices and course of conduct as those of the members of the Classes.

68.   **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no conflicts with the Classes. Plaintiff has retained counsel experienced in class action litigation and TCPA enforcement.

69.     **Predominance and Superiority.** Common questions of law and fact predominate over any questions affecting only individual Class members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual actions would be impracticable given the relatively small statutory damages available per violation. Concentrating the litigation in one forum promotes judicial economy and consistency.

## CAUSES OF ACTION

## COUNT I

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of Plaintiff and the TCPA Prerecorded Voice Class against Defendants)**

70.     Plaintiff incorporates by reference and realleges the preceding paragraphs 1 through 69 as they pertain to each Defendant, respectively, as though fully set forth herein.

71.     This Count is brought on behalf of Plaintiff and the TCPA Prerecorded Voice Class against Defendants Lee Health and Access Medical, individually and/or jointly.

72.     The TCPA and its implementing regulations prohibit initiating any call to a telephone number using an artificial or prerecorded voice without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Where the call includes or introduces an advertisement or constitutes telemarketing, the caller must obtain prior express written consent. 47 C.F.R. § 64.1200(a)(2).

73.     Defendants—or third parties acting on Defendants' behalf—initiated telephone calls to the telephone numbers of Plaintiff and the Class using an artificial or prerecorded voice.

74.     Defendants' prerecorded calls constituted telemarketing—they promoted the purchase of durable medical equipment supplies. Defendants did not have prior express written consent to initiate such calls to Plaintiff or the Class.

75.     Defendants' conduct violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. §§ 64.1200(a)(1), (a)(2).

76.     As a result of Defendants' violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life.

77.     Defendants' violations were willful or knowing because they had actual knowledge that they did not have express consent to place prerecorded calls to Plaintiff or the Class.

78.     Plaintiff and the Class are entitled to:

a.  An injunction prohibiting Defendants from continuing to violate the TCPA. 47 U.S.C. § 227(b)(3)(A);

b.  Statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3)(B); and

c.  Treble damages of $1,500 per violation for Defendants' willful or knowing violations. 47 U.S.C. § 227(b)(3)(C).

21

## COUNT II

### Violation of the FTSA, Fla. Stat. § 501.059(8)(a) — Recorded Message
### (On Behalf of Plaintiff and the FTSA Recorded Message Class against Defendants)

79.    Plaintiff incorporates by reference and realleges the preceding paragraphs 1 through 69 as they pertain to each Defendant, respectively, as though fully set forth herein.

80.    This Count is brought on behalf of Plaintiff and the FTSA Recorded Message Class against Defendants Lee Health and Access Medical, individually and/or jointly.

81.    The FTSA prohibits making or knowingly allowing to be made an unsolicited telephonic sales call that involves the playing of a recorded message when a connection is completed to the number called, without the prior express written consent of the called party. Fla. Stat. § 501.059(8)(a).

82.    Defendants—or third parties acting on Defendants' behalf—made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class that involved the playing of a recorded message promoting the purchase of CPAP and BiPAP supplies.

83.    Defendants' communications were unsolicited telephonic sales calls— they were not made in response to an express request of the person called. Fla. Stat. § 501.059(1)(j), (k).

84.    Defendants did not obtain prior express written consent as defined by the FTSA. No written agreement bearing Plaintiff's signature exists that: (1) clearly

22

authorizes Lee Health or Access Medical to place telephonic sales calls using a recorded message; (2) includes Plaintiff's telephone number; and (3) includes a clear and conspicuous disclosure that Plaintiff is not required to sign the agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

85. Defendants conducted the telephonic sales calls from a location in Florida to consumers located in Florida.

86. Defendants' conduct violated Fla. Stat. § 501.059(8)(a).

87. As a result of Defendants' violations, Plaintiff and the Class suffered concrete harm, including invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and disruption to daily life.

88. Defendants' violations were willful or knowing because they had actual knowledge that they did not have express consent to place prerecorded calls to Plaintiff or the Class

89. Plaintiff and the Class are entitled to:

    a. An injunction prohibiting Defendants from continuing to violate the FTSA. Fla. Stat. § 501.059(10)(a)(1);

    b. Liquidated damages of $500 per violation. Fla. Stat. § 501.059(10)(a)(2);

    c. Treble liquidated damages of $1,500 per violation for Defendants' willful or knowing violations. Fla. Stat. § 501.059(10)(b); and

    d. Reasonable attorneys' fees and costs. Fla. Stat. § 501.059(11)(a).

## COUNT III

### Violation of the FSCA, Fla. Stat. § 934.03(1)(a)
### (On Behalf of Plaintiff and the FSCA Wiretap Class against Lee Health)

90.     Plaintiff incorporates by reference and realleges the preceding paragraphs 1 through 69 as they pertain to Lee Health, as though fully set forth herein.

91.     This Count is brought on behalf of Plaintiff and the FSCA Wiretap Class against Defendant Lee Health.

92.     The FSCA makes it unlawful for any person to intentionally intercept any wire, oral, or electronic communication. Fla. Stat. § 934.03(1)(a). It is lawful to intercept a communication only when all of the parties to the communication have given prior consent. Fla. Stat. § 934.03(2)(d).

93.     Defendant intentionally intercepted wire communications between Plaintiff and Defendant's agents, employees, and representatives by recording telephone calls placed to and from Lee Health's facilities using electronic recording equipment.

94.     Plaintiff did not consent to the interception of these wire communications. Plaintiff affirmatively declined to sign Lee Health's Patient Consent to Audio Recording form. Lee Health's patient chart system contained an advisory flag notifying staff that Plaintiff had not consented to recording. Despite this actual notice, Defendant intercepted Plaintiff's communications.

95.     Defendant's conduct was intentional. Defendant was on actual notice that Plaintiff had not consented to recording—both through its own chart advisory

system and through Plaintiff's express communications. Defendant's own signs warn that recording without consent is illegal in Florida. Yet Defendant recorded anyway. A Lee Health supervisor admitted to Plaintiff that staff routinely lie to patients about whether recording equipment has been disabled.

96.   Defendant's interception of Plaintiff's wire communications was not authorized by any exception under Fla. Stat. § 934.03(2). Defendant is not a law enforcement agency, and its recording was not conducted pursuant to a court order, a lawful investigation, or any other statutory exception.

97.   As a result of Defendant's violations, Plaintiff and the Class suffered concrete harm, including the violation of their statutory right to privacy in their wire communications, the interception of the contents of private telephone conversations, emotional distress, and the chilling effect on their willingness to communicate freely with their healthcare providers.

98.   Plaintiff and the Class are entitled to:

a.   Preliminary or equitable or declaratory relief as may be appropriate. Fla. Stat. § 934.10(1)(a);

b.   Actual damages, but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1,000, whichever is higher. Fla. Stat. § 934.10(1)(b);

c.   Punitive damages. Fla. Stat. § 934.10(1)(c); and

d.   Reasonable attorney's fees and other litigation costs. Fla. Stat. § 934.10(1)(d).

25

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendants immediately implement a litigation hold and take affirmative steps to preserve all documents, records, and electronically stored information ("ESI") relevant to the claims and defenses in this action, including but not limited to:

a.    All call logs, transmission records, and voicemail records reflecting communications initiated to Plaintiff, the putative Class members, or any consumer during the relevant time period, including the originating number, recipient number, date, time, duration, and content of each communication;

b.    All records identifying the equipment, software, platform, or system used to initiate the prerecorded calls at issue, including vendor contracts, platform dashboards, configuration settings, and technical documentation;

c.    All records of prior express consent or prior express written consent on which Defendants rely, including the date, time, method, and content of any purported consent;

d.    All internal do-not-call lists, opt-out logs, suppression lists, and records of consumer requests to stop receiving communications, together

with any written policies, training materials, or procedures related to Defendants' do-not-call compliance;

e.      All recordings of telephone calls with patients or consumers, and all records related to Defendant Lee Health's call recording practices, including the equipment used, configuration settings, consent logs, and policies governing when recording is activated or deactivated;

f.      All marketing materials, scripts, templates, and campaign records associated with the Medical Equipment Solutions prerecorded calling campaign;

g.      All records reflecting Defendant Lee Health's Conditions of Service form, Patient Consent to Audio Recording form, chart advisory flags, and related policies; and

h.      All communications, whether internal or with third parties, concerning the communications at issue, consumer complaints, or compliance with the TCPA, FTSA, FSCA, or any other applicable telemarketing or wiretapping law.

Defendants are on notice that spoliation of any such evidence may result in an adverse inference instruction, sanctions, or other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that this Court enter judgment against Defendants and award the following relief:

A.     An order certifying the Classes as defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel pursuant to Fed. R. Civ. P. 23;

B.     A permanent injunction prohibiting Defendants from further violations of the TCPA, the FTSA, and Defendant Lee Health from further violation of the FSCA;

C.     Statutory damages of $500 per violation of 47 U.S.C. § 227(b)(1)(A)(iii), trebled to $1,500 per violation for Defendants' willful or knowing conduct, pursuant to 47 U.S.C. § 227(b)(3);

D.     Liquidated damages of $500 per violation of the FTSA, trebled to $1,500 per violation for Defendants' willful or knowing conduct, pursuant to Fla. Stat. § 501.059(10);

E.     Liquidated damages of $100 per day or $1,000, whichever is higher, for each violation of the FSCA, pursuant to Fla. Stat. § 934.10(1)(b);

F.     Punitive damages for Defendant Lee Health's violations of the FSCA, pursuant to Fla. Stat. § 934.10(1)(c);

28

G.    Reasonable attorneys' fees pursuant to Fla. Stat. § 501.059(11)(a)

and Fla. Stat. § 934.10(1)(d);

H.    The costs of this action;

I.    Pre-judgment and post-judgment interest as permitted by law; and

J.    Such other and further relief as this Court deems just and proper.

Dated: March 5, 2026                    Respectfully submitted,

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq. *(Lead Counsel)*
Florida Bar No. 0067926
Michael J. Pascucci, Esq.
Florida Bar No. 83397
**EGGNATZ PASCUCCI P.A.**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
jeggnatz@justiceearned.com
mpascucci@justiceearned.com

*Lead Counsel for Plaintiff and the Proposed Classes*

Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

Garrett Berg, Esq.
Florida Bar No. 1000427
**GARRETT BERG LAW, P.A.**
555 NE 15th St., PH A
Miami, FL 33132
garrett@gberglegal.com

*Co-Counsel for Plaintiff and the Proposed Classes*