**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| CHRISTOPHER SPECHT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEE HEALTH SYSTEM, INC., d/b/a LEE HEALTH and d/b/a LEE HEALTH MEDICAL EQUIPMENT SOLUTIONS, and ACCESS MEDICAL SOUTH, L.C. d/b/a LEE HEALTH MEDICAL EQUIPMENT SOLUTIONS,<br><br>Defendants. | Case No. 2:26-cv-00635-JES-DNF<br><br>**CLASS ACTION** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff was a patient at a hospital operated by Defendant Lee Health System, Inc. ("Lee Health"). Lee Health had him removed from the hospital by armed guards and refused to provide him scheduled medical treatment simply because he refused to sign a form consenting to receive prerecorded calls—even though on numerous previous occasions he had already instructed Lee Health that he did not consent to receive prerecorded calls and that he did not consent to his calls being recorded. This fact is not disputed; it is recorded in his patient chart. Defendants then nevertheless

proceeded to place multiple unconsented prerecorded telemarketing calls to him, in violation of the TCPA and the FTSA, and Plaintiff also found out that Lee Health was secretly recording conversations with him, despite falsely telling him he was not being recorded, in violation of the Florida Security of Communications Act.

Despite denying medical treatment to Plaintiff for not consenting, Defendants' Motion to Dismiss [ECF No. 17] ("Motion") argues that Plaintiff consented to receive the calls. The Motion selectively distorts and ignores allegations in the Complaint (which are accepted as true) and asks this Court to draw unreasonable inferences and to resolve ultimate disputed facts in Defendants' favor. None of the affirmative defenses it raises can be adjudicated on the current record. Defendants' Motion should be denied.

## II. PLEADED FACTS ACCEPTED AS TRUE

### A. Plaintiff Refused to Sign the Consent Form.

Plaintiff was a patient of Lee Health and received medical services at its facilities. ECF No. 1 ("Complaint") ¶ 28. Lee Health requires patients to sign a "Conditions of Service" form as a condition to receiving medical care that purports to authorize Lee Health to place automated and prerecorded calls. *Id.* ¶ 29. That provision is buried and does not clearly and conspicuously disclose that the patient is authorizing automated calls. *Id.* ¶¶ 30, 32. It also conditions consent on the receipt of medical care services. *Id.* Plaintiff *never signed* the Conditions of Service form. *Id.* ¶ 31. He "expressly rejected it." *Id.* Plaintiff also separately "provided actual notice to Lee He[a]lth several times of its on-going violations." *Id.* ¶ 33. Lee Health's patient-chart

"RED FLAG ALERT" documented Plaintiff's refusal to consent and directs that he is permitted to amend the Conditions of Service form by crossing out any "consent" language. *Id.* ¶ 34.

**B. Plaintiff's October 23, 2025, ejection by armed security.**

Despite the "RED FLAG ALERT" in Plaintiff's chart, when he arrived at a Lee Health facility for a scheduled barium-swallow test on October 23, 2025, Lee Health refused to provide medical care unless he first signed a form consenting to receive prerecorded calls. *Id.* ¶ 35. When he refused, he was escorted from the building by armed security and told he was a trespasser. *Id.* Defendants had clear and unmistakable instruction that Plaintiff did not consent to receive prerecorded calls. *Id.* ¶ 37.

**C. The Prerecorded Telemarketing Calls.**

After ejecting Plaintiff for refusing to consent, Defendants placed prerecorded calls to Plaintiff's cellular telephone number. *Id.* ¶ 36. The Complaint identifies three exemplar calls—February 5, 8, and 11, 2026—and quotes the prerecorded messages, each substantially similar to the following:

> Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated system, call Lee Health Medical Equipment Solutions toll free at 877 581 1949. For other matters, please call us during normal business hours at 239 343 8290. Thank you.

*Id.*, ¶¶ 40–42. The messages "directly promoted or encouraged the purchase of goods or services, specifically CPAP/BIPAP supplies." *Id.* ¶ 46. The leehealth.org webpage

tied to the callback number describes "an extensive selection of medical products available" for purchase, including "CPAP/BIPAP supplies, Oxygen, Respiratory equipment, Walkers and commodes, and Wheelchairs and hospital beds." *Id.* ¶ 47. The calls "constitute[] a 'telephonic sales call' as defined by the FTSA" and "telemarketing as defined by the TCPA." *Id.* ¶ 48.

Plaintiff did *not* provide prior express consent—written or otherwise—to receive prerecorded calls from Lee Health or Access Medical. *Id.* ¶ 50. The calls were placed under the fictitious name "Lee Health Medical Equipment Solutions," which is registered to *both* Lee Health and Access Medical. *Id.* ¶ 44.

**D. Lee Health's Recording of Plaintiff's Telephone Calls.**

Lee Health "secretly records patient telephone conversations." *Id.* ¶ 51. A Lee Health scheduling-department employee named "Christine" confirmed that inbound and outbound calls are recorded. *Id.* ¶ 52. A Lee Health supervisor admitted that staff *falsely tell* patients that the recording has been turned off. *Id.* ¶ 53.

Lee Health knows Florida is an all-party-consent state. Its facilities display signs reading "No Recording Without Consent" and warning that "unauthorized recording or sharing is illegal in the state of Florida." *Id.* ¶ 54. Lee Health's "Patient Consent to Audio Recording" form expressly tells patients that recording is "voluntary and not a condition for receiving treatment." *Id.* ¶ 55. Lee Health's patient-record system displays a "RED FLAG ALERT" instructing staff that Plaintiff does not consent to recording. *Id.* ¶¶ 3, 56. Despite its mandatory advisory, Lee Health's staff breaks Lee

Health's own (and legally required) rules. They "routinely violate the law, ignore Plaintiff's requests to not be recorded, and record calls with patients who have not consented." *Id.* ¶ 56. Contrary to its official business practice of not recording calls with patients without consent and advising patients that their calls were not recorded, Lee Health installed a new system that records inbound and outbound calls. *Id.* ¶¶ 58, 60.

## III. LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint is only required to allege "enough [facts] to raise a right to relief above the speculative level." *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1327 (11th Cir. 2020).[1] The Court must accept all of the complaint's factual allegations as true and draw every reasonable inference in Plaintiff's favor. *Id.* The same is true for the Rule 12(b)(1) facial standing challenge. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008). When defendants invoke an *affirmative defense*, the dismissal standard is far more demanding: the defense must "clearly appear[] on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

1. Internal citations and quotations omitted, and emphasis added unless otherwise noted.

# IV. ARGUMENT

## A. The Complaint states a plausible TCPA claim (Count I).

To plead a prerecorded voice claim under Section 227(b)(1)(A) of the TCPA, Plaintiff must allege that Defendants (1) placed a call to Plaintiff; (2) using an artificial or prerecorded voice; (3) without Plaintiff's prior express consent. *Bray v. PNC Bank, N.A.*, 196 F. Supp. 3d 1282, 1288-89 (M.D. Fla. 2016) ("This is sufficient to state a claim under the TCPA."). The Complaint plainly alleges these elements. Compl., ¶¶ 31, 40–42, 49–50). Defendants do not contest elements (1) or (2). They only challenge consent, but consent "is an affirmative defense for which the defendant bears the burden of proof" and "'[g]enerally . . . will not support a motion to dismiss' unless the defense 'appears on the face of the complaint.'" *Id.* at 1288-89 (quoting *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016)).

### 1. Defendants cannot credibly rely on consent when internal records show affirmative non-consent, and after forcibly ejecting Plaintiff for refusing to consent.

Defendants' lead argument—that Plaintiff consented to receive prerecorded calls "by virtue of providing his telephone number to Lee Health" (Mot. at 8)— ignores the allegations that must be accepted as true. Relying on a 2008 FCC Order, Defendants assert that "'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'" Mot. at 7-8 (quoting *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 ¶ 9 (Jan. 4,

2008)). Defendants, however, gloss over the critical clause in the FCC order they cite: "***absent instructions to the contrary***."

Plaintiff alleges he repeatedly provided "instructions to the contrary"—specifically, that he did not consent to receive prerecorded calls. Compl., ¶¶ 31, 33–34. Lee Health's chart flagged him as a non-consenting patient, and he was ejected from a Lee Health hospital under armed escort because he refused to sign a consent form. *Id.* ¶¶ 3, 34–35, 56. Defendants cannot infer or presume consent when they have actual notice of "instructions to the contrary." *Id.* ¶¶ 36–37, 40–42 (by "refusing to sign its purported 'consent' form, among other reasons, including Plaintiff's prior notices....")

*Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302 (11th Cir. 2015), does not help Defendants—it hurts them. Although *Murphy* held that a plaintiff who voluntarily gave his cellular number on a new-donor information sheet "expressly consented to be contacted by [defendant] at that number[,]" that holding turned on the absence of "instructions to the contrary." *Id*. Plaintiff here did *nothing but* give instructions to the contrary. He told Lee Health, repeatedly and in writing, that he did not consent (Compl., ¶ 33), refused to sign the consent form (*id.*, ¶ 31), and was ejected by armed security for his refusal to consent (*id.*, ¶ 35).

Defendants' assertion that "Plaintiff does not allege that he ever gave contrary instructions regarding calls about refilling prescriptions" [Doc. 17 at 9] is plainly false. Moreover, even if some prior consent had been given—which it was not—the FCC, the Eleventh Circuit, and Defendants' own caselaw all recognize that consent may be revoked. *See Morris v. Lincare, Inc.*, No. 8:22-cv-2048-CEH-AAS, 2025 U.S. Dist.

LEXIS 181888, at *22 (M.D. Fla. Sep. 17, 2025) ("A party may withdraw its consent at any time using any reasonable method.") (citing 47 C.F.R. § 64.1200(a)(10) ("A called party may revoke prior express consent . . . using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender.")); *see also Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1278 (11th Cir. 2017) (applying to TCPA claims the "common-law standard" for revocation of consent that "'consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.'") (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) (recognizing that "[c]ommon-law notions of consent generally allow oral revocation" and "conclud[ing] that [plaintiffs] . . . were free to orally revoke any consent previously given")).

Whether Defendants ever had consent (they did not), and whether it was revoked are questions of fact for the jury. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) ("Accordingly, the question of whether either Betancourt or Osorio effectively revoked whatever consent State Farm might have had to call No. 8626 should proceed to a jury."). Defendants' Motion should be denied.

**2. Defendants' consent defense cannot be reconciled with the definition in this Circuit.**

Although consent and revocation are ordinarily questions of fact, under the facts of this case, the defense should be rejected as a matter of law. Defendants' assertion that the provision of a cell phone number to a creditor, "reasonably evidences prior express consent" under the TCPA [Mot. at 7] cannot be reconciled with the

binding definition of "prior express consent" in this Circuit. Most recently, in *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025), the Eleventh Circuit noted that the TCPA does not define the term, but the court's own "precedent has filled the void." *Id.* at 313. The Eleventh Circuit has "held 'that Congress sought to incorporate the "common law concept of consent" into the TCPA." *Id.* "[E]xpress consent" is "'[c]onsent that is ***clearly and unmistakably stated***.'" *Id.* (quoting Consent, Black's Law Dictionary (12th ed. 2024); citing *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1100 (11th Cir. 2019)).

Consistent with the Eleventh Circuit's definition, the FCC has defined "prior express written consent" as,

> an agreement, ***in writing***, bearing the signature of the person called that ***clearly authorizes*** the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages ***using…an artificial or prerecorded voice***, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(9) (emphasis added). Critically, the FCC's regulations provide that,

> [t]he written agreement ***shall include a clear and conspicuous disclosure*** informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls ***using…an artificial or prerecorded voice***; and (B) The person ***is not required*** to sign the agreement (directly or indirectly), or agree to enter into such an agreement ***as a condition of purchasing*** any property, goods, or services."

*Id.*, § 64.1200(f)(9)(i).

Defendants' definition of "consent" is at odds with the Eleventh Circuit's controlling definition. Providing one's phone number to a business does not "clearly and unmistakably state" that the recipient consents to receive any calls, much less telemarketing calls specifically using a prerecorded or artificial voice, as required by both the Eleventh Circuit's definition in *Ins. Mktg. Coal.* and the FCC's definition. Moreover, under such facts, there is no "written agreement" or "conspicuous disclosure" informing the consumer that they are consenting to receive calls specifically using a prerecorded or artificial voice, as required by the FCC's definition. Last, treating the mere provision of a phone number as "prior express consent" would in every case make such agreement "a condition of purchasing any property, goods, or services," also in violation of the FCC's definition.

Defendants' reliance on the 2008 FCC Ruling is misplaced. Notably, "'[d]istrict courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation.'" *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846-SDM-CPT, 2025 U.S. Dist. LEXIS 209469, at *2 (M.D. Fla. Oct. 24, 2025) (quoting *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)). To the extent the FCC's 2008 Declaratory Ruling was not superseded by the FCC's amendments to Section 64.1200(f)(9)(i), it is wrong as a matter of Eleventh Circuit law. *See Ins. Mktg. Coal.*

Prior to *McLaughlin*, at least one district court in Florida held that the 2008 FCC Ruling "is not talking about "express consent," but is instead engrafting into the statute an additional exception for "implied consent" — one that Congress did not include."

*Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1239 (S.D. Fla. 2013). *Mais* was later reversed, but only because the Eleventh Circuit held that, "[u]nder the Hobbs Act, the district court lacked jurisdiction to review the [FCC's] interpretation." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1126 (11th Cir. 2014). Similarly, the district court in the *Murphy* decision on which Defendants rely held that it was "bound to give deference to the 1992 FCC Order and its interpretation of 'express consent' under the TCPA" and, as such, could not "consider [plaintiff's] argument that the FCC's definition of 'express consent' is, in essence, 'implied consent'….").

Now, after *McLaughlin*, things have changed. The Supreme Court has instructed district courts to "determine the meaning of the law under ordinary principles of statutory interpretation.'" *El Sayed*, 2025 U.S. Dist. LEXIS 209469, at *2. Recently, the Eleventh Circuit held that "the FCC exceeded its statutory authority under the TCPA" in its 2023 Order by defining "prior express consent" to include "one-to-one consent" restrictions that "impermissibly conflict with the ordinary statutory meaning of 'prior express consent.'" *Ins. Mktg. Coal. Ltd.*, 127 F.4th at 311.

Defendants' reading does not survive scrutiny. The TCPA's prerecorded voice prohibition lives in the same Subsection 227(b)(1)(A) of the TCPA. After *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) confined the ATDS prohibition to random or sequential number generators—*i.e.*, numbers the caller does not provide but are randomly generated—the prerecorded voice prohibition is what protects consumers against robocalls placed to numbers that are provided. Treating mere provision of a number

as 'express consent' to receive prerecorded calls would eviscerate the prerecorded voice prohibition.

### 3. The calls required express "written" consent because they are telemarketing calls, but the applicable standard is immaterial because Defendants did not have any form of consent at all.

Defendants argue that the lower standard of "express consent" (*i.e.*, not "written") should apply to the calls because, according to Defendants, the calls fit the "Health Care Rule" safe harbor at 47 C.F.R. § 64.1200(a)(2). Mot. at 8–9. Even if application of the Health Care Rule could be adjudicated on a motion to dismiss (which as discussed below, it cannot), it would not absolve Defendants of liability because Defendants did not have ***any*** consent to call Plaintiff (written or otherwise). To the contrary, Defendants had actual knowledge of Plaintiff's explicit ***rejection*** of consent to be called. So, Defendants' prerecorded calls without any consent violated the TCPA, regardless of whether they were constituted a "health care message." *See Morris v. Lincare, Inc.*, No. 8:22-cv-2048-CEH-AAS, 2023 U.S. Dist. LEXIS 145522, at *10 (M.D. Fla. Aug. 18, 2023) ("*Lincare I*") ("[E]ven if the calls were healthcare related to invoke the exemption, courts in this Circuit have recognized that 'the Health Care Rule require[s] prior express consent.'") (cleaned up).

Although it would make no practical difference, any factual dispute regarding whether the Health-Care-Rule applies "may not be resolved on a motion to dismiss." *Lincare I*, 2023 U.S. Dist. LEXIS 145522, at *10. Tellingly, Defendants' Motion ignores *Lincare I*, which denied a motion to dismiss based on the Health-Care-Rule and,

instead, cites to *Morris v. Lincare, Inc.*, No. 8:22-cv-2048-CEH-AAS, 2025 U.S. Dist. LEXIS 181888, at *21 (M.D. Fla. Sep. 17, 2025) ("*Lincare II*"), that was later decided ***on a motion for summary judgment***, after discovery and a full evidentiary record.

Defendants' argument would require this Court to make findings of fact on a motion to dismiss—without any evidentiary support—as to (1) which of the two named Defendants placed the calls to Plaintiff; (2) whether that entity was either a "covered entity" or a "business associate" under HIPAA; and (3) whether the calls qualified as a "health care message." Making these factual findings at this stage would disregard Plaintiff's allegations to the contrary, which must be accepted as true.

Defendants' argument also assumes as a matter of fact that Plaintiff had prescriptions to be re-filled by Defendants—facts that are not in the Complaint. Putting that aside, the prerecorded messages Plaintiff received promoted the sale of not only *non*-prescription CPAP products, but also of other non-prescription products through an automated system with a callback number that leads directly to a website that offers products for sale that include oxygen, respiratory equipment, walkers and commodes, and wheelchairs and hospital beds. Compl., ¶¶ 40-47.

Defendants ignore Plaintiff's allegations and baldly assert to the contrary that the calls "were health care messages." Mot. at 9. But the applicable legal analysis is not so rudimentary. "'Application of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message.'" *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012); *see also Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (rejecting defendant's argument that the court

should "consider only the content of the calls in determining whether they were 'telemarketing'" because "[n]either the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"). Notably, "Congressional findings indicate that consumers consider 'prerecorded calls, regardless of the content of the message, to be a nuisance and an invasion of privacy.'" *Golan*, 788 F.3d at 820. "Even when the intended content of a message is not conveyed, the intrusion into the home and the 'seizure' of the phone line is the same." *Id.*

This determination into the underlying purpose of Defendants' calls cannot be made on a motion to dismiss without disregarding Plaintiff's allegations and accepting Defendants' conclusory assertions as true.

**4. Any Healthcare-Treatment Exception does not clearly appear on the face of the Complaint.**

Defendants alternatively invoke the FCC's narrow "healthcare-treatment" safe harbor as an *affirmative defense*. Mot. at 9–11. This argument fails for similar reasons.

To qualify for the healthcare-treatment exception, a caller "must honor opt-out requests immediately." 47 C.F.R. § 64.1200(a)(9)(iv)(H). Several courts have concluded that prescription notifications and similar healthcare-related calls do not qualify for the emergency purposes exception where the recipient has expressly informed the caller that such communications are not wanted. *See St. Clair v. CVS Pharmacy, Inc.*, 222 F. Supp. 3d 779, 780 (N.D. Cal. 2016) ("Continuing to call a customer (or former customer) about a prescription, when the customer has made clear

that he does not want or need the calls, does not fall within the definition of an 'emergency' purpose."); *Coleman v. Rite Aid of Ga., Inc.*, 284 F. Supp. 3d 1343, 1346 (N.D. Ga. 2018) (holding that "the emergency purposes exception to the TCPA does not apply to calls made after [plaintiff] told Rite Aid to stop calling him"); *Farhat v. Unique Healthcare Sys., LLC*,_2022 WL 597783, at *1 (M.D. Fla. Jan. 11, 2022) (a [health care provider] defendant cannot invoke the "emergency purposes" exception if the defendant continues to send messages after the plaintiff has instructed the defendant to stop.")

Here, Plaintiff affirmatively and repeatedly instructed Lee Health to not call him using automated or prerecorded robocalls.

Plaintiff's allegations do not establish that the calls qualify for the healthcare-treatment exception such that this affirmative defense can be adjudicated on a motion to dismiss. The Complaint alleges that the calls were made for the purpose of promoting the sale of a products that are not "strictly limited" to qualifying purposes as required by under Section 64.1200(a)(9)(iv)(C), *i.e.*, "appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions[.]"

Defendants cite to a *Guglielmo v. CVS Pharmacy, Inc.*, No. 3:20cv1560 (JBA), 2021 U.S. Dist. LEXIS 143636 (D. Conn. Aug. 2, 2021), a non-binding district-court decision involving prescription-refill messages from a pharmacy, in which, unlike here,

that plaintiff did "not allege that the messages he received were advertisements[.]" *Id.* at *4-5. It also does not appear that the plaintiff in *Guglielmo* gave explicit instructions that he did not consent to receive prerecorded calls. Here, (1) Plaintiff did give clear instructions that he did not consent to receive calls; (2) the messages at issue do not relate to prescription refills; and (3) the Complaint ***does*** allege that the messages were advertisements. Defendants' Motion should be denied to the extent it relies on the healthcare-treatment under Section 64.1200(a)(9)(iv).

**B. The Complaint states a plausible FTSA claim (Count II).**

The FTSA prohibits the making of "an unsolicited telephonic sales call if such call involves . . . the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). As with the TCPA claim, the Complaint alleges each element. (Compl., ¶¶ 31, 40–42, 49–50). Defendants only dispute whether the prerecorded calls were "unsolicited." Mot. at 11-12. They assert the calls "cannot be unsolicited . . . because of [Plaintiff's] prior and existing relationship with Lee Health." *Id.* at 12. Defendants are wrong because Plaintiff indisputably terminated any "prior or existing business relationship" that could have previously existed when he provided clear instructions that he did not consent to receive prerecorded calls—and was forcibly ejected from the hospital for doing so.

The definition of "established business relationship" that applies under the TCPA, which Defendants concede apples in an FTSA analysis [Mot. at 11–12], expressly provides that any established business relationship is ***terminated*** upon a

consumer's do-not-call request, "***even if the subscriber continues to do business with the seller***." Section 64.1200(f)(5)(i). That definition also provides that an "established business relationship with a particular business entity ***does not extend to affiliated entities*** unless the subscriber would reasonably expect them to be included…." Section 64.1200(f)(5)(ii). The plain language of the FTSA also prohibits any call to a consumer "who has previously communicated . . . that he or she does not wish to receive any outbound call . . . ." Fla. Stat. § 501.059(5).

These provisions defeat Defendants' legal arguments for two reasons. First Plaintiff clearly and explicitly made do-not-call requests to Lee Health. Second, there is no record evidence as to which Defendant placed the prerecorded calls, so discovery will bear out whether any established business relationship was ever formed with each entity in the first place.

Defendants' Motion to Dismiss Plaintiff's FTSA claim should be denied.

### C. The Complaint states a plausible Florida Security of Communications Act claim (Count III).

The FSCA prohibits intentional interception of any wire or oral communication without all-party consent. Fla. Stat. §§ 934.03(1)(a), (2)(d). The Complaint pleads each element. (Compl., ¶¶ 51–60). Defendants invoke the "business-extension exception" of § 934.02(4)(a)(1)—an affirmative defense Defendants must prove, and one that must "clearly appear[] on the face of the complaint" to support dismissal. *Quiller*, 727 F.2d at 1069. This defense cannot be adjudicated on the face of the Complaint.

Whether Defendants' surreptitious recording was done "in the ordinary course of its business" requires proof of what equipment was used, who furnished it, and what business the supplier is in—facts that *Stalley v. ADS Alliance Data Sys., Inc.*, 997 F. Supp. 2d 1259, 1270–71 (M.D. Fla. 2014) was only able to resolve after discovery. The defense also requires evidence of the entity's actual established business practice; "'ordinary course of business' cannot be expanded to mean anything that interests a company." *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983). Every opinion Defendants cite reached this exception only at summary judgment. *See Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co.*, 924 F.2d 215, 217 (11th Cir. 1991); *Stallely v. ADS Alliance Data Sys., Inc.*, 602 F. App'x 732, 734 (11th Cir. 2015); *Stalley*, 997 F. Supp. 2d at 1270–71. When a court in this District considered the exception at the pleading stage, it refused to apply it. *See Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*, No. 8:12-CV-2079-T-17MAP, 2013 U.S. Dist. LEXIS 139636, at *17 (M.D. Fla. Sep. 27, 2013) ("the Court cannot determine whether the business extension exemption or telephone equipment exemption applies"); *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 U.S. Dist. LEXIS 40038, at *18 (M.D. Fla. Mar. 6, 2025) (court "declines to make dispositive merits determinations on a motion to dismiss").

Further, the exception applies only where the recording is performed pursuant to the entity's actual established practice. The Complaint pleads the opposite: Lee Health's official policy is not to record patient calls without consent (Compl., ¶ 54); its facilities post signs warning "[u]nauthorized recording or sharing is illegal in the state

of Florida" (*id.*); its "Patient Consent to Audio Recording" form tells patients recording is "voluntary and not a condition for receiving treatment" (*id.*, ¶ 55); Plaintiff's chart bears a "RED FLAG ALERT" memorializing his refusal (*id.*, ¶¶ 3, 56); staff "falsely tell patients that the recording has been turned off" (*id.*, ¶ 53); and Lee Health "secretly" records calls (*id.*, ¶ 51). Defendants' ordinary and stated business practice is to obtain consent, not to secretly record confidential medical communication without consent – yet it uses equipment that records these sacred communications regardless of any consent in violation of its own business practice and established rules. A practice an entity disclaims, conceals, and warns is illegal cannot, on the pleadings, be deemed part of its ordinary course; it is the deviation from its ordinary business practice.

Defendants misconstrued Plaintiff's allegation that, "around the summer of 2025," he was told Lee Health installed a "new telephone system." Mot. at 15–16. That allegation describes a change from prior telephone system, is attributed a single employee, and is at odds with Lee Health's official and publicly posted ordinary business practices. Whether the change reflects ordinary course or a covert deviation is a question of fact. *Watkins*, 704 F.2d at 582. Count III should not be dismissed.

**D. The Complaint plausibly pleads Article III standing.**

Defendants last argue that Plaintiff does not have Article III standing or concrete harm. Mot. at 16–19. This argument is meritless. Plaintiff alleges at least three unwanted prerecorded calls, despite Plaintiff's clear instruction that he did not consent to receive those calls. Circuit courts around the country, including the Eleventh

Circuit, hold that the receipt of such unwanted calls constitutes a concrete injury that confers Article III standing. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) ("The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing."); *see also Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("hold[ing] that the receipt of an unwanted text message causes a concrete injury").

Standing likewise exists for Plaintiff's FSCA wiretap claim. Federal courts addressing analogous wiretap and electronic-communications statutes have uniformly held that the unconsented interception of communications is, standing alone, a concrete Article III injury. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–18 (9th Cir. 2020) (such statutes "codif[y] a context-specific extension of the substantive right to privacy" and bear a "close relationship" to traditional privacy torts).

## V. CONCLUSION

For the reasons above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, if the Court finds any claim deficient, any dismissal should be without prejudice and Plaintiff respectfully moves for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

Dated: May 6, 2026

Respectfully submitted,

*/s/ Christopher Gold*
Christopher Gold, Esq.

Florida Bar No. 088733
GOLD LAW, PA
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: (305) 900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Classes*

Joshua H. Eggnatz, Esq.
Florida Bar No. 0067926
Michael J. Pascucci, Esq.
Florida Bar No. 83397
EGGNATZ PASCUCCI P.A.
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
jeggnatz@justiceearned.com
mpascucci@justiceearned.com

*Lead Counsel for Plaintiff*

Garrett Berg, Esq.
Florida Bar No. 1000427
GARRETT BERG LAW, P.A.
555 NE 15th St., PH A
Miami, FL 33132
garrett@gberglegal.com

*Counsel for Plaintiff and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on all counsel of record.

*/s/ Christopher Gold*
Christopher Gold, Esq.