UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER SPECHT,
individually and on behalf of all
others similarly situated,

Plaintiff,

v. Case No: 2:26-cv-635-KCD-KRH

LEE HEALTH SYSTEM, INC.,
d/b/a LEE HEALTH and d/b/a
LEE HEALTH MEDICAL
EQUIPMENT SOLUTIONS, and
ACCESS MEDICAL SOUTH,
L.C. d/b/a LEE HEALTH
MEDICAL EQUIPMENT
SOLUTIONS,

Defendants.

---

**ORDER**

Plaintiff Christopher Specht alleges that prerecorded messages were placed to his phone from numbers linked to Defendants Lee Health System, Inc. and Access Medical South, L.C. (collectively "Defendants") despite his refusal to consent to such messages. He further alleges that certain phone conversations with Lee Health employees were recorded without his consent. He now seeks damages on behalf of himself and three proposed classes under

the Telephone Consumer Protection Act ("TCPA"), the Florida Telephone Solicitation Act ("FTCA"), and the Florida Security of Communications Act ("FSCA").

Defendants have moved to dismiss the complaint. (Doc. 17.) For the reasons below, their motion is denied.

## I. Background

These are the facts taken from the complaint, which must be accepted as true at this stage. Beginning in at least October 2025, Specht was a patient of Defendant Lee Health. (Doc. 1 at ¶ 28.) As a condition to receiving medical care, patients of Lee Health are required to sign a "Conditions of Service" form which includes a provision "purporting to authorize Lee Health to place automated telephone calls and prerecorded messages to the patient." (*Id.* ¶ 29.)

Specht refused to sign the Conditions of Service form. (*Id.* ¶ 31.) Lee Health then placed a "RED FLAG ALERT" in his medical chart documenting that "he was allowed to amend the Conditions of Service form by crossing out section 4(g) when he registers for services." (*Id.* ¶ 34.) Nevertheless, Lee Health refused to provide care and Specht was escorted by armed security out of the building. (*Id.* ¶ 35.)

Although Specht refused to agree to the unamended Conditions of Service form, Defendants placed prerecorded phone calls containing the following message on February 5, 2026, February 8, 2026, and February 11, 2026.

> Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household. It's time to replenish your supplies. To order eligible supplies using our 24-hour automated… Hi, this is Lee Health Medical Equipment Solutions calling for the CPAP or BiPAP patient in your household.… It's time to replenish your supplies. To order eligible supplies using our 24-hour automated system, call Lee Health Medical Equipment Solutions toll free at 877 581 1949. For other matters, please call us during normal business hours at 239 343 8290. So much for opting out of not giving permission for automated phone calls. Thank you.

(*Id.* ¶¶ 38-42.) The prerecorded messages identified "Lee Health Medical Equipment Solutions" as the caller, a name registered to Defendants. (*Id.* ¶ 44.) Moreover, the call-back number from the messages "239-343-8290," is linked to a website owned or controlled by Defendant Lee Health. (*Id.* ¶ 45.)

In addition to his refusal to agree to section 4(g) of the Conditions of Service form, Specht also refused to agree to the "Patient Consent to Audio Recording" form, which allows Lee Health patients to voluntarily consent to recording of phone calls. (*Id.* ¶ 55.) Specht's medical chart also contained a "RED FLAG ALERT" to this effect. (*Id.* ¶ 56.)

Nevertheless, multiple Lee Health employees and supervisors disclosed to Specht that (1) inbound and outbound calls in the scheduling department are recorded, (2) staff has no ability to disable the recordings, (3) staff members do not disable recording equipment even after being notified that a patient has not consented, and (4) staff members routinely tell callers that the recording has been stopped – even if recording continues – "to move the call along." (*Id.* ¶¶ 52-53, 59.) Moreover, on one occasion, an employee informed him that call recording had been disabled but a second employee later confirmed that was not true. (*Id.* ¶ 58.) Since December 19, 2024, Specht has received at least 58 incoming phone calls from Lee Health, each of which he alleges was recorded without his consent. (*Id.* ¶ 57.)

As a result of Lee Health's prerecorded messages and recording his calls without consent, Specht claims he suffered harm including "inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, consumption of phone battery and data, violation of statutory privacy rights, and disruption to daily life." (*Id.* ¶ 62.) To vindicate those alleged privacy violations, Specht brings this suit on behalf of himself and three proposed classes. But we can put those class allegations aside for now. Specht has not yet moved to certify any of these proposed groups under Federal Rule

of Civil Procedure 23. And so, at this stage, the only question before the Court is whether the complaint states a viable claim as to Specht himself.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

"We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny." *Caterpillar Fin. Services Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346–47 (11th Cir. 2025). "At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations . . . to determine whether they plausibly suggest an entitlement to relief." *Id.*

## III. Discussion

Defendants move to dismiss each of Specht's claims for various reasons. The Court discusses each in turn.

### A. TCPA Claim (Count I)

The TCPA was enacted to counteract consumer outrage "over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019). Automated or prerecorded phone calls made to private phone numbers were particularly regarded as an "invasion of property." *Id.* Specht alleges that Defendants violated § 227(b)(1)(A)(iii), which prohibits initiating any call to a telephone number using a prerecorded voice without prior express consent. (Doc. 1 at ¶ 72.) To state a claim under § 227(b)(1)(A)(iii), a plaintiff must allege: (1) that the defendant called his cellular telephone; (2) using an automatic telephone

dialing system ("ATDS"); (3) without his prior express consent. *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014).

Defendants do not challenge whether Lee Health made automatic pre-recorded calls to Specht's cellular telephone. Instead, they argue that Specht has not sufficiently pled the third element—that the calls were made without his "prior express consent." (Doc. 17 at 8-9.)

Although the TCPA leaves the phrase "prior express consent" undefined, the Eleventh Circuit has explained that "express consent" is "[c]onsent that is clearly and unmistakably stated[,]" and "prior express consent" requires that "the [called party] must have given his express [consent] before he received the call." *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 313 (11th Cir. 2025). "Whether a party has given his prior express consent depends heavily on the facts of each case." *Id.*

Section 227(b)(2) of the TCPA "gives the FCC the power to prescribe regulations to implement the TCPAs prohibition on unconsented-to robocalls." *Id.* at 312. In 2012, the FCC issued an order "tightening the restrictions for automated telemarketing calls under the TCPA[.]" *Morris v. Lincare, Inc.*, No. 8:22-CV-2048-CEH-AAS, 2025 WL 2661482, at *10 (M.D. Fla. Sept. 17, 2025). In that order, "[t]he FCC heightened the consent requirement for certain automated telemarketing calls, requiring a TCPA caller to obtain prior express

written consent, as opposed to the statutorily required prior express consent." *Id; see also In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1838 ¶ 20 (Feb. 5, 2012).

The FCC has carved out an exemption to the express written consent requirement for prerecorded messages which deliver a "health care message" by or on behalf of a HIPAA-covered entity or its business associate. *See* 47 C.F.R. § 64.1200(a)(2). In their motion, Defendants assert that the health-care safe harbor should apply in this case. (Doc. 17 at 7-8, 9-11). According to Defendants, Specht expressly consented to receive the prerecorded phone calls by releasing his telephone number to Lee Health. (*Id.* at 7.) Therefore, as Defendants see it, Lee Health had sufficient express consent to contact Specht because express *written* consent was not required. (*Id.* at p. 8.) Specht responds that Defendants were specifically aware that he did not consent to receiving prerecorded calls (*see* Doc. #20 at 6-7), so the safe harbor makes no practical difference under these facts because "Defendants did not have any consent to call [Specht] (written or otherwise)." (*Id.*)

The Court agrees with Specht. The FCC has explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary*." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768

F.3d 1110, 1118 (11th Cir. 2014). Taking Specht's allegations as true, as the Court must at this stage, he specifically objected to receiving prerecorded from Defendants when he refused to sign the unamended Conditions of Service form. (Doc. 1 at ¶ 31.) Furthermore, Lee Health was aware of Specht's objection because it placed a "RED FLAG ALERT" in his chart. (Doc. #1 at ¶ 34.) Because Defendants allegedly received instructions that Specht did not consent to receiving prerecorded telephone messages, he has sufficiently alleged that they lacked express consent to leave such messages, and the health care rule safe-harbor is immaterial under the facts of this case.

The FCC has carved out an additional exemption for certain "exigent" calls made to cellular telephone numbers for a "healthcare treatment purpose" that are "not charged to the called party." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8030–31 ¶¶ 143, 146 (July 10, 2015). Such emergency calls are exempted from TCPA liability. *Id.*

Defendants also argue that the prerecorded calls alleged in Specht's complaint are not actionable because, as prescription notification calls, they fall under the healthcare-treatment exemption. (Doc. #17 at 9-10.) Specht responds that the healthcare-treatment exemption does not apply in circumstances such as those alleged here where the patient has expressly

informed the caller that such communications are not warranted (Doc. 20 at 14-15.) Moreover, according to Specht, the messages were advertisements and not related to prescription refills. (*Id.*)

As to Specht's first argument, the Court agrees. To qualify for the healthcare-treatment exception, a caller "must honor opt-out requests immediately." 47 C.F.R. § 64.1200(a)(9)(iv)(H). Here, Specht has plausibly alleged that he gave clear instructions that he did not consent to receive such calls. As for the second argument, whether the calls were made for prescription refills or for promoting the sale of products cannot be resolved here. Accordingly, the Court finds that Specht has sufficiently stated his TCPA claim.

**B. FTSA Claim (Count II)**

Next up, Specht alleges that Defendants violated the "autodialer provision" of the FTSA, which provides that "[a] person may not make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed . . . without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). This claim is lacking, according to Defendants, because the FTSA specifically defines "unsolicited telephonic sales calls" to exclude, *inter*

*alia*, calls made "[t]o a person with whom the telephone solicitor has a prior or existing business relationship." (Doc. 17 at 11-12 (quoting Fla. Stat. § 501.059(1)(k)(3))). And "by Plaintiff's own allegations, he is a patient of Lee Health and has received or sought healthcare services as recently as October 23, 2025." (*Id.*)

Specht concedes that the existence of an established business relationship forecloses an FTSA claim. But he points to a built-in off-ramp. Any such relationship, he notes, terminates the moment a consumer makes a do-not-call request. And that, Specht says, is exactly what happened here. According to the complaint, he explicitly told Lee Health on multiple occasions to stop calling him—effectively severing whatever business relationship they once might have had. (Doc. 20 at 15-16.)

Although Section 501.059 does not define the term "established business relationship," Florida courts have looked to federal regulations interpreting its federal counterpart (the TCPA) for guidance. *See TSA Stores, Inc. v. Dep't of Agric. & Consumer Servs.*, 957 So. 2d 25, 29 (Fla. Dist. Ct. App. 2007). Federal law defines an established business relationship as

> . . .a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity

> within eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5).

At the time of the alleged phone calls, Specht had an established business relationship with Defendant Lee Health. Nevertheless, the regulatory text, as borrowed from the federal regulations, anticipates exactly this scenario. 47 C.F.R. § 64.1200(5)(i). Taking Specht's allegations as true, he gave clear instructions that he did not consent to receive such calls, which were reflected by the "RED FLAG ALERT" in his medical chart.

Moreover, according to Specht, the definition of "established business relationship" "does not extend to affiliated entities unless the subscriber would reasonably expect them to be included[.]" Thus, because it is not clear which Defendant placed the prerecorded calls, the existence of an established business relationship cannot by resolved on the instant motion. (Doc. 20 at 16-17.) The Court agrees that further factual development is necessary to determine (1) whether Specht had an established business relationship with Defendant Access Medical, and if not, (2) whether Specht could reasonably expect Access Medical "to be included given the nature and type of goods or

services offered by [Access Medical and the identity of [Access Medical]." *See* 47 C.F.R. § 64.1200. For all these reasons, Defendants' Motion to Dismiss Count II is denied.

**C. FSCA Claim (Count III)**

The FSCA makes it unlawful for any person to intentionally intercept any wire, oral, or electronic communication without prior consent of all parties. Fla. Stat. § 934.03(1)(a). In Count III, Specht alleges that Defendant Lee Health violated the FCSA "by recording telephone calls placed to and from Lee Health's facilities using electronic recording equipment" without his consent. (Doc. 1 at ¶¶ 93-94.)

Hoping to stop this claim at the starting gate, Lee Health invokes a statutory safe harbor commonly known as the business-extension exception. (Doc. 17 at 12-13 (citing *Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co.*, 924 F.2d 215, 217 (11th Cir. 1991).) As grounded in the statutory text, the exception carves out an exclusion for standard telephone equipment furnished by a communications provider and used by a subscriber "in the ordinary course of its business." Fla. Stat. § 934.02(4)(a)(1).

The business-extension exception has two prongs: "First, the communication must be intercepted by equipment furnished by a provider of wire or electronic communication service in the ordinary course of its business.

Second, the call must be intercepted in the ordinary course of business." *Royal Health Care Services, Inc.*, 924 F.2d at 217. Defendants assert that both prongs are met because (1) "there is nothing in the complaint to suggest that anything other than legitimate telephone equipment was used to allegedly intercept patient telephone calls[,]" and (2) the Complaint alleges that "all calls were recorded by Lee Health as a matter of routine business policy." (Doc. 17 at 14-15.)

Specht responds that Defendants' invocation of this defense cannot be adjudicated on the face of his complaint. Although Lee Health's *official* policy is not to record patient calls without consent (Doc. 1 at ¶ 54), its "Patient Consent to Audio Recording" form tells patients recording is "voluntary and not a condition for receiving treatment" (*id.* ¶ 55), and Specht's chart bears a "RED FLAG ALERT" memorializing his refusal (*id.* ¶¶ 3, 56), multiple Lee Health employees and supervisors disclosed to Specht that (1) inbound and outbound calls in the scheduling department are recorded, (2) staff has no ability to disable the recordings, (3) staff members do not disable recording equipment even after being notified that a patient has not consented, and (4) staff members routinely tell callers that the recording has been stopped – even if recording continues – "to move the call along." (*Id.* ¶¶ 52-53, 59.) According to Specht, these allegations are insufficient to make a determination as to

whether Lee Health recorded his phone calls in the ordinary course of its business. (Doc. 20 at 18-19.) The Court agrees.

As explained, the purpose of a motion to dismiss under Rule 12(b)(6) "is to test the facial sufficiency of" a complaint. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). Accordingly, "a complaint may be subject to dismissal for failure to state a claim—based on an affirmative defense—only when the affirmative defense appears on the face of the complaint." *Wells v. Brown*, 58 F.4th 1347, 1350 (11th Cir. 2023). Here, the question of whether all calls at issue were recorded by Lee Health as a matter of routine business policy—as required for Defendants to invoke the business extension exemption—is simply not answered on the face of Specht's complaint. The motion is therefore denied as to Count III.

**D. Injury-in-fact**

Finally, Defendants assert that "Plaintiff does not allege any concrete injury resulting from the prerecorded messages or the recorded calls[,]" and therefore cannot establish Article III standing. (Doc. 17 at 16-17.) Specht responds that the receipt of Defendants' prerecorded message calls and the unconsented interception of his communications are, on their own, each enough to constitute a concrete injury and satisfy Article III's standing requirement.

Specht wins here too. *See Cordoba*, 942 F.3d at 1270 ("The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing."). Moreover, this standing is sufficient to maintain Specht's class-action claims because where a plaintiff "seek[s] to proceed as a class, only one named plaintiff for each proposed class needs to have standing for a particular claim to advance." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019).

For these reasons, Defendants' Motion to Dismiss (Doc.17) is **DENIED**.

**ORDERED** in Fort Myers, Florida on August 11, 2026.

Kyle C. Dudek
United States District Judge